IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| *IN RE* CIRCULAR THERMOSTAT ANTITRUST LITIGATION / | MDL Docket No. C 05-01673 WHA |
| This document relates to:<br>ALL ACTIONS / | **ORDER REMANDING ACTIONS TO STATE COURTS** |

## INTRODUCTION

In these actions transferred to this Court by the Judicial Panel on Multidistrict Litigation and consolidated for pretrial proceedings, plaintiffs allege unfair competition and antitrust violations under various state laws:

*Brian Brock, et al., v. Honeywell International, Inc.*, No. C 04-5328 WHA (California);
*Thomas Fullum, et al., v. Honeywell International, Inc.*, No. C 05-2076 WHA (New York);
*John McKinnon, et al., v. Honeywell International, Inc.*, No. C 05-2920 WHA (Maine);
*R. Sadler Bailey, et al., v. Honeywell International, Inc.*, No. C 05-2986 WHA (Tennessee); and
*Alfred T. Wright, et al., v. Honeywell International, Inc.*, No. C 05-3025 WHA (Vermont).[*]

Plaintiffs now move to remand these actions back to state courts due to lack of subject-matter jurisdiction. Because this order finds that there was an inadequate basis for removal, plaintiffs' motions to remand are **GRANTED** in all actions.

---

[*] The following action was also transferred, but the case file has not yet been received by the Clerk: *Vincent Fagan, et al., v. Honeywell International, Inc.*, D. Massachusetts, C.A. No. 1:05-10119. The voluntary dismissal of *R. Sadler Bailey, et al., v. Honeywell International, Inc.*, No. C 05-2986 WHA was approved on August 18, 2005.

**STATEMENT**

Plaintiffs in each of the member actions are indirect purchasers of circular thermostats manufactured and sold by defendant Honeywell International, Inc. Because all of these actions are prosecuted by the same core group of counsel, the factual allegations in the complaints are nearly identical. The named plaintiffs assert claims on behalf of themselves and all other residents of their respective states who have purchased Honeywell circular thermostats since June 30, 1986. Only state law claims are asserted.

To protect its circular thermostats, defendant secured both a utility patent (U.S. Patent No. 2,394,920), which expired in 1963, and a design patent (U.S. Patent No. D176,657), which expired in 1970. In 1968, defendant submitted an application for federal trademark protection, but it was denied on the basis that the circular shape could not be trademarked because it was functional. At this point, several other thermostat manufacturers (including Penn Controls, Quad Six and Hunter Fan Company) attempted to enter the market for circular thermostats, but were ultimately unsuccessful, allegedly due to defendant's predatory acts. On May 9, 1986, defendant filed a second trademark application, which ultimately led to a federal trademark (No. 1,622,108) being registered on November 13, 1990. This trademark is a subject of the current litigation.

Each complaint alleges that defendant engaged in a pattern of anticompetitive practices that led to a nearly 100% monopoly of the alleged relevant market (*i.e.*, circular thermostats for residential use), thus enabling it to sell its products at artificially inflated prices. Specifically, defendant is accused of threatening and coercing rival thermostat manufacturers into not producing competing circular thermostats by a pattern of sham and baseless trademark infringement litigation; deceiving the United States Patent and Trademark Office ("PTO") into believing no competition existed, something it knew to be false, and thereby securing its registered trademark; combining with a rival manufacturer (Emerson Electric) to prevent that rival from giving unfavorable testimony in opposition to defendant's second trademark application; and purchasing at least one rival thermostat manufacturer (Quad Six) so as to suppress competition for circular thermostats and to mislead the PTO (*Brock* Compl. ¶ 45;

*Fullum* Compl. ¶ 29; *McKinnon* Compl. ¶ 77; *Bailey* Compl. ¶ 77; *Wright* Compl. ¶ 77; *Fagan* Compl. ¶ 77).

On the basis of these allegedly deceptive and monopolistic business practices, plaintiffs assert various violations of state law. In California, plaintiffs' causes of action are unlawful restraint of trade in violation of the Cartwright Act, California Business and Professions Code § 16720, *et seq.*; common law monopolization; and unfair competition in violation of California Business and Professions Code § 17200, *et seq.* In New York, plaintiff allege that defendant engaged in illegal practices to suppress competition in violation of § 349 of New York's General Business Law. In Maine, plaintiffs assert restraint of trade in violation of 10 Maine Revised Statutes § 1101, *et seq.* In Tennessee, the complaint alleges unlawful restraint of competition and price fixing in violation of the Tennessee Trade Practices Act, Tennessee Code Annotated § 47-25-101, *et seq.* and unfair competition in violation of the Tennessee Consumer Protection Act, Tennessee Code Annotated § 47-18-104, *et seq.* In Vermont, plaintiffs assert unfair competition in violation of 9 Vermont Statutes Annotated § 2451, *et seq.* Finally, in Massachusetts, plaintiffs allege unfair competition in violation of Massachusetts General Law Chapter 93A § 2.

Defendant removed all six actions to federal court, on the basis that there were "substantial federal questions" raised regarding the validity of its trademark and its conduct before the PTO. Plaintiffs made timely motions for remand. The majority of district courts either declined to rule or denied the motion without prejudice to renewal; only one court (Western District of Tennessee) engaged in any substantive analysis before denying the motion. By order of the Judicial Panel on Multidistrict Litigation, these actions were transferred to this Court for consolidated pretrial proceedings. After a round of supplemental briefing as well as a hearing, this order now addresses the pending remand motions.

**ANALYSIS**

1.  **LEGAL STANDARD.**

Removal under 28 U.S.C. 1441(b) is permitted for actions involving a federal question over which the district court could have exercised original jurisdiction pursuant to 28 U.S.C.

3

1331.  The removing party bears the burden of establishing that removal is proper.  *Emrich v. Touche Ross & Co.*, 846 F.2d 1190, 1195 (9th Cir. 1990).  The removal statutes are strictly construed such that any doubts are resolved in favor of remand.  *Gaus v. Miles, Inc.*, 980 F.2d 564, 566 (9th Cir. 1992).

The "well-pleaded complaint rule" provides that federal jurisdiction only exists when a federal question is presented on the face of plaintiff's properly pleaded complaint, unaided by the answer or by the petition for removal.  *Gully v. First Nat'l Bank in Meridian*, 299 U.S. 109, 113 (1936).  A federal defense is not part of a plaintiff's claim, "even if the defense is anticipated in the plaintiff's complaint, and even if both parties admit that the defense is the only question truly at issue in the case."  *Franchise Tax Bd. of Calif. v. Construction Laborers Vacation Trust for S. Calif.*, 463 U.S. 1, 14 (1983).  This rule thus enables the plaintiff, as "master of the complaint," to have his action heard in state court "by eschewing claims based on federal law."  *Caterpillar Inc. v. Williams*, 482 U.S. 385, 399 (1987).

The "vast majority" of federal-question cases "are those in which federal law creates the cause of action;" yet, where the plaintiff only asserts causes of action under state law, an action may nonetheless be deemed to "arise under federal law 'where the vindication of a right under state law necessarily turn[s] on some construction of federal law.'"  *Merrell Dow Pharms., Inc. v. Thompson*, 478 U.S. 804, 808 (1986)(citation omitted).  The "mere presence of a federal issue in a state cause of action," however, does not automatically raise a federal question.  *Id.* at 813.

In *Merrell Dow*, misbranding of a drug in violation of a federal statute — the Federal Food, Drug, and Cosmetic Act ("FDCA") — was alleged to establish a rebuttable presumption of negligence under state law.  *Id.* at 806.  All agreed that plaintiffs asserted no federal claims.  The Supreme Court ultimately found that because there was no private right of action under the FDCA, "the presence of a claimed violation of the statute as an element of a state cause of action [wa]s insufficiently 'substantial' to confer federal-question jurisdiction."  *Id.* at 814.

This issue was recently revisited by the Supreme Court in *Grable & Sons Metal Prods., Inc. v. Darue Eng'g & Mfg.*, ___ U.S. ___, 125 S. Ct. 2363 (2005).  Therein, the Court again recognized that "in certain cases federal question jurisdiction will lie over state-law claims that

4

implicate significant federal issues." *Id.* at 2367. "[F]ederal jurisdiction demands not only a contested federal issue, but a substantial one, indicating a serious federal interest in claiming the advantages thought to be inherent in a federal forum. *Ibid.* Yet, this is no bright-line rule.

> But even when the state action discloses a contested and substantial federal question, the exercise of federal jurisdiction is subject to a possible veto. For the federal issue will ultimately qualify for a federal forum only if federal jurisdiction is consistent with congressional judgment about the sound division of labor between state and federal courts governing the application of § 1331. Thus, *Franchise Tax B[oard]* explained that the appropriateness of a federal forum to hear an embedded issue could be evaluated only after consider the "welter of issues regarding the interrelation of federal and state authority and the proper management of the federal judicial system." Because arising-under jurisdiction to hear a state-law claim always raises the possibility of upsetting the state-federal lines drawn (or at least assumed) by Congress, the presence of a disputed federal issue and the ostensible importance of a federal forum are never necessarily dispositive; there must always be an assessment of any disruptive portent in exercising federal jurisdiction.
>
> These considerations have kept us from stating a "single, precise, all-embracing" test for jurisdiction over federal issues embedded in state-law claims between non diverse parties. We have not kept them out simply because they appeared in state raiment, . . . but neither have we treated "federal issue" as a password opening federal courts to any state action embracing a point of federal law. Instead, the question is, does a state-law claim necessarily raise a stated federal issue, actually disputed and substantial, which a federal forum may entertain without disturbing any congressionally approved balance of federal and state judicial responsibilities. *Id.* at 2367–68 (internal citations omitted).

In *Grable*, petitioner was the former owner of real property seized by the Internal Revenue Service and sold to the respondent in a federal tax sale. Grable brought a quiet title action in state court, claiming that pursuant to 26 U.S.C. 6335, the IRS should have given notice of the sale by personal service, rather than certified mail. The Supreme Court found that removal jurisdiction was proper because the disputed "meaning of the federal tax provision is an important issue of federal law that sensibly belongs in a federal court." *Id.* at 2368.

**2.   APPLICATION.**

There is no dispute that plaintiffs' complaints only allege causes of action under state laws. Indeed, claims arising under federal law are expressly disclaimed in five of the six complaints (*Brock* Compl. ¶ 15; *McKinnon* Compl. at 1; *Bailey* Compl. at 1, ¶ 4; *Wright* Compl. at 1; *Fagan* Compl. at 1). The issue, then, is whether these actions nonetheless "arise under"

1  federal law. Defendant argues that plaintiffs' complaints raise substantial questions of
2  trademark law. The Court disagrees.

3  At first blush, it would greatly simplify matters if the trademark issues could be
4  characterized as anticipated defenses, as plaintiffs argue, rather than as part of plaintiffs' causes
5  of action. But alas, this is not so. The alleged fraudulent procurement of a registered trademark
6  and subsequent sham litigation are both elements of plaintiffs' primary theories of
7  monopolization and unfair competition.

8  Plaintiffs also argue that there is no substantial federal *question* because findings of
9  trademark invalidity and defendant's fraudulent conduct before the PTO were already made in a
10 prior lawsuit. *Eco Mfg. LLC v. Honeywell Int'l Inc.*, 295 F. Supp.2d 854 (S.D. Ind. 2003),
11 *affirmed*, 357 F.3d 649 (7th Cir. 2003). In short, plaintiffs assert that collateral estoppel would
12 render any further litigation of these federal issues unnecessary. *See Coker v. Purdue Pharma
13 Co.*, 314 F. Supp.2d 777, 783–74 (W.D. Tenn. 2004). Closer examination, however, reveals
14 that this collateral-estoppel theory would likely be unsuccessful.

15 By way of example, "California courts apply the doctrine of issue preclusion (also
16 referred to as collateral estoppel in state courts) if: (1) the issue decided in the prior case is
17 identical with the one now presented; (2) there was a final judgment on the merits in the prior
18 case, and (3) the party to be estopped was a party to the prior adjudication." *San Remo Hotel,
19 L.P. v. San Francisco City and County*, 364 F.3d 1088, 1096 (9th Cir. 2004). Similar standards
20 are used by other courts. Even assuming *arguendo* that plaintiffs are able to meet the first and
21 third prongs of this test, there was no final judgment on the merits in *Eco*.

22 On the contrary, the decision cited above was merely an order denying preliminary
23 injunctive relief. In the Ninth Circuit, "issues litigated in a preliminary injunction action are not
24 res judicata and do not form a basis for collateral estoppel." *Kuzinich v. County of Santa Clara*,
25 689 F.2d 1345, 1350–51 (9th Cir. 1982); *see also Bomberger v. McKelvey*, 35 Cal.2d 607,
26 612–13 (1950)("[U]nless it appears that the court intended a final adjudication of the issue
27 involved, a decision on an application for a preliminary injunction does not amount to a
28 decision on the ultimate rights in controversy."). This order recognizes that the level of finality

6

1  required to preclude further litigation of the same issue is somewhat flexible and "turns upon
2  such factors as the nature of the decision (*i.e.*, that it was not avowedly tentative), the adequacy
3  of the hearing, and the opportunity for review." *Lummos Co. v. Commonwealth Oil Refining
4  Co.*, 297 F.2d 80, 89 (2nd Cir. 1961).  A judgment rendered in an appeal from a preliminary
5  injunction order could "be given preclusive effect if it is necessarily based upon a determination
6  that constitutes an insuperable obstacle to the plaintiff's success on the merits." *Miller Brewing
7  Co. v. Jos. Schlitz Brewing Co.*, 605 F.2d 990, 995–96 (7th Cir. 1979).  But no such
8  determination was made here.

9  In *Eco*, Judge David F. Hamilton of the Southern District of Indiana explicitly noted that
10 "[a]ll findings of fact and conclusions of law [we]re based on the limited record established in
11 the preliminary injunction proceeding and [we]re subject to reconsideration on a more complete
12 record." *Eco*, 295 F. Supp.2d at 856.  Likewise, on appeal, Judge Frank H. Easterbrook stressed
13 that the only question on review was "whether the shape of Honeywell's thermostat is so clearly
14 non-functional that the district judge abused his discretion by failing to enjoin Eco's competing
15 model." *Eco*, 357 F.3d at 653.  The Seventh Circuit explicitly declined to "express any view"
16 on the issue of whether "Honeywell bamboozled the Patent and Trademark Office when seeking
17 registration during the 1980s;" nor did it express "any ultimate view about functionality." *Id.* at
18 655.  The district court was encouraged to "proceed expeditiously to final decision," further
19 confirming that one had not yet been reached.  *Ibid.*  Thus, collateral estoppel does not apply
20 here.  *Compare Lummos*, 297 F.2d at 87–88 (finding that at least part of the prior First Circuit
21 decision was "not conclusive . . . since the Court stated it had 'not decided' that issue").

22                                              *     *     *

23 The proper inquiry, then, is whether "some substantial, disputed question of federal law
24 is a necessary element of one of the well-pleaded state claims." *Merrell Dow*, 478 U.S. at 813.
25 The key word is "necessary."  To be sure, trademark validity and defendant's alleged fraud
26 upon the PTO will no doubt be a large part of the proceedings in these actions, but this order
27 finds that a federal question is not a *necessary* element of plaintiffs' state claims.
28

United States District Court
For the Northern District of California

7

"When a claim can be supported by alternative and independent theories — one of which is a state law theory and one of which is a federal law theory — federal question jurisdiction does not attach because federal law is not a necessary element of the claim." *Rains v. Criterion Sys., Inc.*, 80 F.3d 339, 346 (9th Cir. 1996).  In other words, just because an element that is essential to a particular *theory* might be governed by federal trademark law does not mean that the entire monopolization *claim* "arises under" federal law.  *Christianson v. Colt Indus. Operating Corp.*, 486 U.S. 800, 811–13 (1988).

In *Christianson*, the question was whether the action was one "arising under" the patent statutes, such that the Federal Circuit rather than the Seventh Circuit would have jurisdiction over the appeal.  The underlying dispute concerned the making of M16 rifles.  Christianson was a former Colt employee who established his own company and begin selling M16 parts.  In a previous action, Colt had sued Christianson alleging patent infringement, but voluntarily dismissed its claims after it lost a motion for preliminary injunction.  Christianson then brought his own lawsuit under federal antitrust laws, alleging (among other theories of monopolization) that Colt had been asserting invalid patents.  After losing on summary judgment, Colt appealed to the Federal Circuit, which concluded that it lacked jurisdiction and transferred the appeal to the Seventh Circuit.  The Seventh Circuit raised the jurisdictional issue *sua sponte* and transferred the case back.  The Federal Circuit again found that it lacked jurisdiction, but proceeded to address the merits anyway.  *Id.* at 804–07.

The Supreme Court granted certiorari to resolve this "peculiar jurisdictional battle."  *Id.* at 803.  The Court first observed that "patent law did not in any sense create petitioners' antitrust or intentional-interference claims" but the question was whether patent law was "a necessary element of one of the well-pleaded [antitrust] claims."  *Id.* at 809 (brackets in original).  The Court then found that even if the invalidity of Colt's patents was a necessary element of the monopolization theory "on which petitioners ultimately prevailed in the District Court," it was "only one of several, and the only one for which the patent-law issue [wa]s even arguably essential."  *Id.* at 811.  An alternative theory of monopolization revolved around allegations that Colt had given petitioners permission to use its supposedly proprietary

8

information. The Court concluded that petitioners claims did not "arise under" patent law because the complaint also alleged a completely unrelated "alternative, non-patent theory" of monopolization. *Id.* at 811–813.

So too here, an alternative, non-trademark theory of monopolization exists in these MDL cases. Although the supposed fraud on the PTO is a prominent theme throughout the complaints, an alternative theory of predatory action is pled, albeit less prominently. This alternative theory is that Honeywell purchased "at least one rival thermostat manufacturer so as to suppress competition for circular thermostats in the relevant market" (*See, e.g., Brock* Compl. ¶ 45(d)). All six complaints allege that defendant wrongfully acquired Quad Six, another manufacturer that produced a circular thermostat (*Brock* Compl. ¶ 47; *Fullum* Compl. ¶ 42; *McKinnon* Compl. ¶ 87; *Bailey* Compl. ¶ 87; *Wright* Compl. ¶ 87; *Fagan* Compl. ¶ 87). Specifically, "in late 1985, Honeywell and Quad Six entered into negotiations that resulted in Honeywell's acquisition of Quad Six which removed the Quad Six Round Thermostat from the market" (*See, e.g., Brock* Compl. ¶ 47).

There is no denying the fact that an alternative theory of how Honeywell eliminated competition (*i.e.*, via an acquisition) appears on the face of the complaints. This alone is dispositive. Moreover, while this was tied to allegations of sham litigation, (the acquisition was allegedly negotiated so Quad Six could avoid "expensive trademark infringement litigation"), defendant's first application for a federal trademark had been rejected in 1968 and its second application was not even filed until May 9, 1986. Therefore, when Quad Six was allegedly being threatened with litigation in 1985, Honeywell had no registered trademark in its circular thermostat (*See, e.g., Brock* Compl. ¶ 47). Thus, the threatened *trademark* litigation could only have been under *state* common law, not *federal* trademark law. *See* 15 U.S.C. 1114 (extending protection only to registered trademarks, as opposed to unfair competition claims under § 43(a) of the Lanham Act, 15 U.S.C. 1125(a), which was not alleged to be part of any sham litigation).

Defendant argues that plaintiffs alleged that this acquisition of Quad Six not only suppressed competition for circular thermostats, but was also an instrument for deceiving the PTO (Omnibus Opp. 8). This argument proves too much. Honeywell's acquisition (and

9

elimination) of a competitor to maintain its monopoly position in the market could *itself* lend support to claims of unlawful restraint of trade or unfair competition. Viewed in this light, it would be irrelevant to plaintiffs' claims whether defendant's subsequently-acquired trademark was invalid or fraudulently obtained. Under this theory, the alleged harm of supra-competitive prices does not stem from trademark misuse or any fraudulent conduct before the PTO. It simply results from the elimination of a competing thermostat manufacturer that would otherwise check defendant's power to engage in monopolistic pricing. *Cf. Conroy v. Fresh Del Monte Produce Inc.*, 325 F. Supp.2d 1049, 1056 (N.D. Cal. 2004)(finding the question of patent validity "entirely irrelevant" to defendants' alleged misrepresentations to competitors about whether a particular pineapple was protected). Although defendant is *also* accused of (1) engaging in sham litigation by threatening to sue Quad Six beforehand and (2) subsequently downplaying the acquisition so the PTO would be tricked into believing that there were no competitors in the first place, these are entirely separate allegations of wrongdoing.

\*   \*   \*

It is true that *Hunter Douglas, Inc. v. Harmonic Design, Inc.*, 153 F.3d 1318 (Fed. Cir. 1998), held that patent validity and/or infringement, among other things, are "substantial" enough federal issues to sustain removal jurisdiction. This decision, of course, is not binding, for (at most) these MDL actions involve Honeywell's *trademark* rights in its circular thermostat. The substantiality arguments are stronger where patents are concerned, given that Congress conferred *exclusive* subject-matter jurisdiction in the federal courts over patent litigation. The opposite is true for trademarks. Rights of action arising under federal trademark laws may be brought in *state* courts too — *i.e.*, federal courts have *non-exclusive* jurisdiction over questions of trademark law. 28 U.S.C. 1338(a). As such, the Federal Circuit's views on whether issues of *patent* law raise substantial federal questions are not applicable here. The same reasoning holds for any dictum in *Coker*, 314 F. Supp.2d at 782 (observing that the claims of unfair competition and monopolization based on theories that defendants made material misrepresentations to the PTO and engaged in sham litigation would raise substantial questions of patent law sufficient to create federal jurisdiction if collateral estoppel did not apply).

1    Even if plaintiffs' state-law claims necessarily raised a substantial federal issue, the
Court would need to consider "a possible veto" if exercising jurisdiction would disturb "any
congressionally approved balance of federal and state judicial responsibilities." *Grable*, 125 S.
Ct. at 2367–68. Significantly, as described above, Congress has indicated that state courts are
equally competent to tackle issues of trademark law; unlike patents or copyrights, federal courts
do *not* have exclusive jurisdiction over trademarks.

Finally, it is worth noting that, as indirect purchasers, plaintiffs have no standing to sue
for violations of federal antitrust laws. *Illinois Brick Co. v. Illinois*, 431 U.S. 720, 747–48
(1977); *In re Sugar Antitrust Litig.*, 588 F.2d 1270, 1273 (9th Cir. 1978). In other words,
plaintiffs' causes of action for monopolization can *only* arise under state indirect purchaser
statutes. *California v. ARC Am.*, 490 U.S. 93, 105–06 (1989). Likewise, although there is a
private right of action for fraudulent trademark registration, as consumers rather than
competitors, plaintiffs have not suffered the type of injury compensable under 15 U.S.C. 1120.
Thus, even if plaintiffs had wanted to, they could not have sought relief under federal statutes.

**CONCLUSION**

This order emphasizes that the Court is required to resolve any doubts in favor of
remand. *Gaus*, 980 F.2d 564. For the foregoing reasons, plaintiffs' motions to remand are
**GRANTED**.\*\* The *Brock* action is immediately **REMANDED** to the Superior Court of California
for the County of San Francisco. The remaining actions are **RE-TRANSFERRED** back to the
respective federal district courts from which they came, for remand to the state courts where
they were filed.

**IT IS SO ORDERED.**

Dated: August 24, 2005

WILLIAM ALSUP
UNITED STATES DISTRICT JUDGE

---

\*\* Although the decision denying remand by Judge Bernice Bouie Donald was incongruous with this order, any potential problem which may have been caused by inconsistent rulings is rendered moot by plaintiffs' voluntary dismissal of the Tennessee action, approved by previous order.

11